UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1: 16-CV-00004-HBB

**MARIE E. STINSON**                                              **PLAINTIFF**

**VS.**

**NANCY A. BERRYHILL, Acting
Commissioner of Social Security**                                              **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Marie E Stinson ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).  Both the Plaintiff (DN 14) and Defendant (DN 21) have filed a Fact and Law Summary.

Pursuant to General Order No. 2014-17, this matter has been referred to the undersigned United States Magistrate Judge to review the Fact and Law Summaries and submit Findings of Fact, Conclusions of Law and Recommendations.   By Order entered April 13, 2016 (DN 12), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted.   No such request was filed.

FINDINGS OF FACT

Plaintiff protectively filed applications for Disability Insurance Benefits and Social Security Income payments[1] on July 6, 2012 (Tr. 13, 106). Plaintiff alleged that she became disabled on December 30, 2005 as a result of a pinched nerve in the back, high blood pressure, and high cholesterol (Tr. 106, 190-). Administrative Law Judge Todd Spangler ("ALJ") conducted a hearing on August 20, 2014 in London, Kentucky (Tr. 13, 656-58). Plaintiff was present and represented by attorney David Cross. Also present and testifying were William Ellis, as a vocational expert, and Dr. Arthur Lorber, as a medical expert (Tr. 13, 656-58).

In a decision dated November 18, 2014, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 13-23). The ALJ noted that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2005 (Tr. 15). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity at any time relevant to the decision (Tr. 15).

At the second step, the ALJ determined there was an absence of evidence demonstrating that Plaintiff's hypertension was a severe impairment prior to December 31, 2005, her date last insured (Tr. 15-16). Additionally, the ALJ found an absence of evidence showing her purported back problems and anxiety were medically determinable impairments prior to December 31, 2005, the date last insured (Tr. 16). Therefore, the ALJ concluded that Plaintiff did not have a severe impairment or combination of impairments prior to December 31, 20015 (Tr. 16-17).

---

1 Plaintiff's application for Social Security Income benefits does not appear in the record. However, the documents within the administrative record indicate that Plaintiff filed her application on the same day that she filed her application for Disability Insurance Benefits.

At the second step, the ALJ also determined since Plaintiff's application for SSI payments was filed on July 6, 2012, Plaintiff has had the combined "severe" impairments of obesity and lumbar degenerative disc disease (Tr. 17-18). Additionally, the ALJ found that Plaintiff's hypertension, hyperlipidemia, vertigo, kidney problems, poor vision, chronic pain in her feet, pain and swelling in her right hand, irritable bowel syndrome, gastritis, and mental impairment are nonsevere impairments within the meaning of the regulations (Tr. 17-21). At the third step, the ALJ concluded since July 6, 2012, Plaintiff has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 16).

At the fourth step, the ALJ found that since Plaintiff's application for SSI payments was filed on July 6, 2012, Plaintiff has had:

> [T]he residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that she cannot climb ladders, ropes or scaffolds; can perform no more than frequent balancing, stooping, kneeling, crouching, crawling or climbing of ramps and stairs. She can tolerate no more than concentrated exposure to vibration and no more than moderate exposure to work place hazards.

(Tr. 21). Relying on testimony from the vocational expert, the ALJ found since Plaintiff's application for SSI payments was filed on July 6, 2012, Plaintiff Plaintiff has been capable of performing past relevant work as a sewing factory worker (Dr. 22-23). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from December 30, 2005 through the date of the decision, November 18, 2014 (Tr. 23).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision. The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 6-9).

CONCLUSIONS OF LAW

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 6-9). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); see 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

4

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. See "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

> 5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fourth step.

A

1. Plaintiff's Argument

Plaintiff challenges Finding No. 5 because her vertigo and gastritis are also severe impairments (DN 14 PageID # 738). Plaintiff acknowledges that the failure to find a particular impairment severe does not, standing alone, constitute reversible error provided "the effect of that condition is considered in determining whether the claimant 'retained sufficient residual functional capacity to allow him to perform substantial gainful activity'" (Id. PageID # 740 citing Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987)). Plaintiff argues that she established functional limitations for both conditions through her testimony and the medical records which were not taken into consideration by the ALJ in determining Plaintiff's residual functional capacity (Id. PageID # 740-42). Plaintiff asserts that the ALJ did not properly consider the impact of Plaintiff's dizziness/vertigo and epigastric pain when considering her residual functional capacity, and, therefore, the matter should be remanded to the ALJ with instructions to address this issue (Id.).

2. Defendant's Argument

Defendant points out that the ALJ acknowledged Plaintiff's complaints related to her vertigo and gastric problems but found those conditions caused no more than minimal limitations on Plaintiff's ability to work (DN 21 PageID # 759-60 citing Tr. 18-19). Defendant asserts that to the extent those conditions affected Plaintiff's work activities, the ALJ adequately accounted for

all of Plaintiff's credible limitations in the residual functional capacity assessment by limiting Plaintiff to medium work with postural and environmental limitations (Id. citing Tr. 21). Further, Defendant points out because medical signs and laboratory findings did not show a medically determinable impairment related to Plaintiff's claims of vertigo, the ALJ was not obligated to accept or accommodate Plaintiff's complaints concerning her difficulty sitting/standing and lifting stemming from her vertigo (Id. PageID # 760-61 citing 20 C.F.R. §§ 416.929(a) and (b)). Defendant asserts that the ALJ evaluated Plaintiff's complaints about stomach problems and reasonably determined there was no evidence to show they caused more than minimal limitations (Id.).

   3. Discussion

At the second step in the sequential evaluation process, a claimant must demonstrate she has a "severe" physical or mental impairment to continue with the remaining steps in the disability determination. 20 C.F.R. §416.920(a)(4)(ii); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (*per curiam*). To satisfy this burden, the claimant must show she suffers from (1) a "medically determinable" physical or mental condition; (2) the condition satisfies the 12 month duration requirement set forth in 20 C.F.R. §§ 404.1509 and/or 416.909; and (3) the condition "significantly limits" her ability to do one or more basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii) and (c), 416.920(a)(4)(ii) and (c); Social Security Ruling 96-3p; Social Security Ruling 96-4p; Higgs, 880 F.2d at 863.

To satisfy the "medically determinable" requirement the claimant must present objective medical evidence (i.e., signs, symptoms, and laboratory findings) that demonstrates the existence of a physical or mental impairment. 20 C.F.R. § 416.908; Social Security Ruling 96-4p, 1996 WL

7

374187, at *1 (1996); Social Security Ruling 96-3p, 1996 WL 374181, at *2 (1996).  Thus, symptoms and subjective complaints alone are not sufficient to establish the existence of a "medically determinable" physical or mental impairment.  Social Security Ruling 96-4p, 1996 WL 374187, at *1.

Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting.  20 C.F.R. § 416.921(b).  An impairment will be considered non-severe only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience."  Farris v. Sec'y of Health & Human Servs., 773 F.2d 85, 90 (6th Cir. 1985) (citing Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984)).

Although Plaintiff's subjective complaints of vertigo are memorialized in the record, there is an absence of objective medical evidence demonstrating the existence of a medically determinable condition.  The records from the Cumberland Family Medical Center merely indicate that Dr. Tammy Brown prescribed medications such as Meclizine and Zofran to address Plaintiff's subjective complaints (*see* Tr. 254, 522-43, 551, 565).  Dr. Brown did order the cranial MRI scan performed on March 19, 2014 that revealed:

> On the T1 weighted sagittal images, midline structures appear intact.  On the T2 and FLAIR axial images, brain parenchyma a is homogeneous.  There is some mild increased signal identified within the periventricular white matter.  The findings are fairly subtle and probably related to minimal changes of chronic microvascular ischemia. No foci of cortical signal abnormality are identified.

> On the T2 weighted images, there is no evidence of significant mucoperiosteal thickening or air fluid levels. The left maxillary sinus is hypoplastic. The 7th and 8th nerve complexes appear intact.

(Tr. 544). Apparently, Dr. Brown concluded the MRI generated essentially normal findings because she did not mention the results in subsequent treatment notes dated March 21, April 4, April 18, April 22, May 19, and July 18, 2014 (Tr. 522-43).

The ALJ recognized that Plaintiff's history of vertigo dated back to November 2013, and that medications such as Meclizine and Zofran were prescribed to address Plaintiff's symptoms (Tr. 18). The ALJ also recognized an overall absence of any specialist treatment, even though Plaintiff was referred to a neurologist in March 2014, or diagnostic testing such as a tilt table testing to identify any objective etiology for Plaintiff's vertigo complaints (Id.). Further, the ALJ noted that the cranial MRI[2] generated normal findings (Id.). Despite the paucity of objective medical evidence regarding this medical condition, the ALJ must have found that Plaintiff's vertigo is a "medically determinable" impairment because the ALJ determined "this condition no more than minimally impacts the claimant's ability to perform basic work-related activities and is therefore less than severe in nature" (Id.). The undersigned concludes that the ALJ's findings, at the second step, regarding Plaintiff's vertigo are supported by substantial evidence in the record and comport with applicable law.

Plaintiff's complaints about epigastric pain and acid reflux resulted in Dr. Cross performing a gastro-scope on January 2, 2014 (Tr. 499, 510). During the procedure, Dr. Cross took a biopsy and sent it to the lab to determine if Plaintiff had Helicobacter pylori bacteria (Id.).

---

2 The ALJs reference to a "cranial CT scan" appears to be a typographical error because he cites the cranial MRI report in the record (Tr. 18 citing Exhibit 18F at p. 27).

Additionally, Dr. Cross observed that Plaintiff had a normal esophagus, an intact gastro esophageal junction, a normal duodenum, but her stomach had moderate to severe gastritis (inflamed stomach lining) (Id.). Dr. Cross prescribed a proton pump inhibitor ("PPI") (Protonix 40 mg twice daily) to reduce the gastric acid production in her stomach and indicated that he would prescribe an antibiotic if the biopsy was positive for Helicobacter pylori bacteria (Tr. 488, 499, 510). Although the lab and pathology reports were negative for Helicobacter pylori (Tr. 480, 509), Dr. Cross' treatment note indicates Plaintiff was H. pylori positive and that antibiotics were prescribed to treat the bacterial infection in Plaintiff's stomach (Tr. 506). On January 26, 2014, Plaintiff advised Dr. Cross that she continued to experience epigastric pain, acid reflux, and nausea (Tr. 504).

On January 13, 2014, a gallbladder sonogram revealed a mass like density in the left kidney (Tr. 508). On January 31, 2014, a CT scan of the abdomen was performed with and without IV contrast to assess the mass in the left kidney that had been revealed during the sonogram (Tr. 495-96). The CT scan revealed bilateral renal cysts with a large cyst in the mid to upper pole of the left kidney measuring 4.9 x 5.1 cm, and at least two if not three cysts were seen in the right kidney in the mid-posterior aspect (Id.).

On February 19, 2014, Dr. Cross performed a colonoscopy that revealed essentially normal results with the exception of proctitis in the rectum (Tr. 501). Proctitis is an inflammation of the lining of the rectum.[3]

The ALJ acknowledged Plaintiff's complaints regarding kidney problems as well as medical evidence showing the presence of renal cysts (Tr. 18-19). However, the ALJ observed

---

[3] http://www.mayoclinic.org/diseases-conditions/proctitis/basics/definition/con-20027855.

there was no evidence in the record of any hospitalizations or even outpatient specialist treatment related to kidney problems (Id.). As a result, the ALJ found no evidence of a severe impairment with regard to Plaintiff's kidneys (Id.). The undersigned concludes that the ALJ's findings, at the second step, regarding Plaintiff's kidney problems are supported by substantial evidence in the record and comport with applicable law.

The ALJ noted that Plaintiff had reported a history of irritable bowel syndrome during her October 2012 consultative examination (Tr. 19). Due to the absence of any corresponding treatment records, the ALJ rejected Plaintiff's assertion and found no evidence to support irritable bowel syndrome as a medically determinable impairment (Id.). There is no indication in Dr. Cross' records that plaintiff was diagnosed with irritable bowel syndrome. Therefore, the undersigned concludes that the ALJ's findings at the second step, regarding Plaintiff's purported irritable bowel syndrome are supported by substantial evidence in the record and comport with applicable law.

The ALJ observed that Plaintiff complained about significant stomach problems (Tr. 19). The ALJ acknowledged that testing had revealed moderate gastritis and that Plaintiff tested positive for a H. pylori bacterial infection (Id.). However, the ALJ noted there was no evidence in the record indicating that these conditions "more than minimally impact her ability to perform basic work-related activities and are therefore less than severe in nature" (Id.). The undersigned concludes that the ALJs findings at the second step, regarding plaintiff's stomach problems are supported by substantial evidence in the record and comport with applicable law. In sum, at the

second step, substantial evidence in the record supports the ALJ's finding that Plaintiff failed to demonstrate her vertigo and stomach problems are "severe" impairments within the meaning of the regulations.

Assuming, *arguendo*, that substantial evidence did not support the ALJ's findings with regard to Plaintiff's vertigo and stomach problems, that alone would be an insufficient basis to reverse and remand the ALJ's decision. See Maziarz, 837 F.2d at 244. So long as an Administrative Law Judge finds that other impairments are severe, continues on with the sequential evaluation process, and considers all of the claimant's impairments in the remaining steps, the error is harmless. See Maziarz, 837 F.2d at 244; Mish v. Comm'r of Soc. Sec., No. 1:09-CV-753, 2011 WL 836750, at *1-2 (W.D. Mich. Mar. 4, 2011); Stephens v. Astrue, No. 09-55-JBC, 2010 WL 1368891, at *2 (E.D. Ky. Mar. 31, 2010); Meadows v. Comm'r of Soc. Sec., No. 1:07cv1010, 2008 WL 4911243, at *12-13 (S.D. Ohio Nov.13, 2008); Jamison v. Comm'r of Soc. Sec., No. 1:07-CV-152, 2008 WL 2795740, at *8-9 (S.D. Ohio July 18, 2008); Tuck v. Astrue, No. 1:07-CV-00084-EHJ, 2008 WL 474411, at *3 (W.D. Ky. Feb. 19, 2008).

Here, the ALJ found that Plaintiff's obesity and lumbar degenerative disc disease are "severe" impairments (Tr. 17), and continued with the sequential evaluation process (Tr. 18-23). The decision clearly indicates that the ALJ considered Plaintiff's vertigo and stomach problems in the remaining steps in the sequential evaluation process (Id.). As mentioned above, the ALJ found Plaintiff's vertigo was a "nonsevere" impairment (Tr. 18). Nonetheless, to accommodate any residuals that may be associated with vertigo, the ALJ included within the residual functional

capacity assessment the environmental limitation that Plaintiff "can tolerate no more than concentrated exposure to vibration and no more than moderate exposure to workplace hazards" (Tr. 18, 21, 22).

In the context of finding Plaintiff's stomach problems are "nonsevere", the ALJ acknowledged but discounted Plaintiff's subjective complaints (Tr. 18-21). While Plaintiff argues her subjective complaints are supported by the medical evidence, the undersigned notes that much of what she has cited is her own subjective complaints to the physicians, not objective medical evidence. While Plaintiff has cited some objective medical evidence, it does not substantiate her claim that the ALJ should have included physical limitations in the residual functional capacity assessment. For example, although Dr. Cox diagnosed gastritis and an H. pylori bacterial infection in Plaintiff's stomach, Dr. Cox did not articulate any physical limitations caused by these conditions. Rather, Dr. Cox merely treated these conditions with a prescription of antibiotics and a PPI. Further, there is no medical opinion in the record indicating the renal cysts on Plaintiff's kidneys would impose any type of physical limitation on Plaintiff. Clearly, substantial evidence in the record supports the ALJ's findings regarding Plaintiff's subjective complaints about her stomach problems. Therefore, the ALJ's decision not to include Plaintiff's subjective complaints about her stomach problems within the residual functional capacity assessment comports with applicable law. In sum, Plaintiff is not entitled to relief under the holding in Maziarz.

B

1. Plaintiff's Argument

Plaintiff disagrees with Finding No. 7 (DN 14 PageID # 738, 742-43). Specifically, Finding No. 7 reads as follows:

> After careful consideration of the entire record, the undersigned finds that, since her application for Supplemental Security Income payments was filed on July 6, 2012, the claimant has had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that she cannot climb ladders, ropes or scaffolds; can perform no more than frequent balancing, stooping, kneeling, crouching, crawling or climbing of ramps and stairs. She can tolerate no more than concentrated exposure to vibration and no more than moderate exposure to workplace hazards.

(Tr. 21). Plaintiff asserts the ALJ, in making the above residual functional capacity assessment, failed to consider substantial evidence in the record demonstrating that she has great difficulty in walking, has serious complaints of dizziness and vertigo, and experiences "severe gastritis" (DN 14 PageID # 738). Additionally, Plaintiff contends that substantial medical evidence in the record demonstrates her lumbar degenerative disc disease prevents her from performing medium work (Id.). Plaintiff points out pain treatment records from 2012 reveal that she had "lumbosacral spondylosis without myelopathy facet arthropathy" and "lumbar or lumbosacral disc degeneration" (Id. PageID # 742 citing Tr. 262). Plaintiff further points out that June 2012 medical records show her range of motion was restricted with extension, she experienced muscle spasms in her back, she had a limited range of motion, her back movements were painful, and tenderness was noted (Id. citing Tr. 228, 271-72). Plaintiff additionally points out that an objective study in November 2013 revealed "degenerative changes of the thoracic spine" and that Exhibit 18F reveals multiple notations of chronic back pain by Dr. Brown, Plaintiff's primary

treating physician (Id. citing Tr. 522-579). Plaintiff contends "[d]espite this overwhelming evidence, the ALJ opined that the claimant could lift 35-40 pounds, which is not based on the substantial evidence" (Id. PageID # 743).

2. Defendant's Argument

Defendant contends substantial evidence in the record supports the ALJ's residual functional capacity findings with regard to environmental limitations imposed by Plaintiff's vertigo and the absence of limitations imposed by Plaintiff's gastritis (DN 21 PageID # 762). Defendant points out that the ALJ relied on 3 different medical opinions in the record in making the residual functional capacity findings (Id.). Defendant notes that the ALJ relied on the opinion of Dr. Robert Nold, a consultative examiner, who opined that Plaintiff could lift between the 35 and 40 pounds (Id. citing Tr. 212). Defendant observes that the ALJ considered the opinion of Dr. Amanda Lange, a nonexamining state agency physician, who also opined that Plaintiff could perform the requirements of medium work (Id. citing Tr. 22, 411-18). Defendant points out that Dr. Lorber, the medical expert who testified during the administrative hearing, agreed that Plaintiff's lumbar spine impairment would somewhat reduce her functional capacity to perform medium work (Id. PageID # 763 citing Tr. 665). Defendant argues those three medical opinions constitute substantial evidence that support the ALJ's finding that Plaintiff has the residual functional capacity to perform a limited range of medium work despite her degenerative disc disease (Id.). Additionally, Defendant contends that the ALJ directly address Plaintiff's lumbar degenerative disc disease, noting that "imaging studies revealed generally mild abnormalities, [and] that clinical findings documented no more than tenderness without any indication of neurological deficits or significantly reduced range of motion" (Id. citing Tr. 22). Further,

defendant points out that the ALJ explained there was no opinion from any treating physician about Plaintiff's functional capacity (Id. citing Tr. 22).

3. Discussion

The residual functional capacity finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546, 416.945(a), 416.946. The residual functional capacity finding is based on a consideration of medical source statements and all other evidence in the case record about what a claimant can do despite limitations caused by his or her physical and mental impairments. 20 C.F.R. §§ 404.1529, 404.1545(a), 404.1546, 416.929, 416.945(a), 416.946; Social Security Ruling 96-5p; Social Security Ruling 96-7p. Thus, in making the residual functional capacity finding the Administrative Law Judge must necessarily assign weight to the medical source statements in the record and consider the subjective allegations of the claimant and make credibility findings. 20 C.F.R. §§ 404.1527(c), 404.1529; Social Security Ruling 96-7p.

In the preceding section, the undersigned concluded that substantial evidence in the record supports the ALJ's residual functional capacity findings with regard to the environmental limitations imposed by Plaintiff's vertigo and the absence of physical limitations imposed by Plaintiff's stomach problems. Therefore, the undersigned need only address Plaintiff's challenge to the ALJ's findings regarding Plaintiff's ability to walk and perform medium work despite her diagnosis of lumbar degenerative disc disease.

As previously mentioned, Plaintiff argues that the ALJ failed to consider substantial evidence in the record showing that Plaintiff has great difficulty walking, and her lumbar degenerative disc disease prevents her from performing medium work. As articulated, Plaintiff's

argument encourages the Court to review the record and determine whether there is substantial evidence to support more restrictive physical limitations than what the ALJ found in his residual functional capacity assessment. However, an Administrative Law Judge's decision "is not subject to reversal merely because substantial evidence would have supported an opposite decision." Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (quoting Baker v. Heckler, 730 F.2d 1147, 1149 (8th Cir. 1984)). Under the applicable standard, the Court must determine whether the ALJ's findings[4] are supported by "substantial evidence." "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). Thus, the Court must determine whether substantial evidence in the record supports the challenged findings in the ALJ's residual functional capacity assessment.

On October 1, 2012, Dr. Nold performed a consultative physical examination of Plaintiff (Tr. 209-15). In relevant part, Dr. Nold's opinion indicated that Plaintiff "should be able to bend and lift items up to 35 or 40 pounds without much difficulty and her back is probably not a major problem as long as she avoids very heavy lifting" (Tr. 212). Dr. Lange, a nonexamining state agency physician, reviewed the medical record on June 12, 2013, and opined that Plaintiff could perform the requirements of medium work (Tr. 411-18). Additionally, Dr. Lorber testified as a medical expert during the administrative hearing (Tr. 661-65). Based on his review of all the

---

4 The Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence." 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992). Here, the ALJ's decision is the final decision of the Commissioner because the Appeals Council denied Plaintiff's request for review of the ALJ's decision. See 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); see 42 U.S.C. § 405(h) (finality of the Commissioner's decision).

medical evidence in the record, Dr. Lorber opined that Plaintiff's lumbar spine impairment would somewhat reduce her functional capacity to perform medium work (Tr. 665).

The ALJ observed that the record did not contain any treating source opinion regarding Plaintiff's physical limitations (Tr. 22). In pertinent part the ALJ's decision reads as follows:

> In the absence of such, I have considered consultative examiner Dr. Robert Nold, who opined that the claimant should be able to lift at least 35 to 40 pounds (Exhibit 2F). I have also considered the state agency rationale [Dr. Lange] contained in Exhibits 1F and 8F finding the claimant capable of performing a limited range of medium work, and while I have considered the exacerbating effects of the claimant's obesity upon her underlying lumbar disc disease, I note that imaging studies revealed generally mild abnormalities, that clinical examinations consistently documented no more than tenderness without any indication of neurological defects or significantly reduced range of motion and that the limitation proposed by Dr. Nold and the state agency are generally consistent with the longitudinal record. As such, I find that further limitations are not warranted pursuant to Social Security Ruling 02-1p. I further note that the environmental limitation regarding exposure to workplace hazards appropriately accommodates her history of vertigo, which I previously deemed to be less than severe in nature. My ultimate assessment is likewise consistent with the medical expert testimony offered by Dr. Lorber.

(Tr. 22). The ALJ's finding that Plaintiff can perform a limited range of medium work, despite her degenerative disc disease, is supported by substantial evidence in the record and fully comports with applicable law, including the regulations for evaluating consultative and treating physician's opinions and pain. See 20 C.F.R. §§ 404.1519a-p, 404.1527, 404.1529, 416.919a-p, 416.927, 4416.929.

Plaintiff's argument did not cite any medical evidence substantiating her subjective complaint that she has great difficulty with walking. Her testimony during the administrative hearing merely indicates that her legs give out on her if she stands or walks for more than 30

18

minutes (Tr. 677). The ALJ's decision does not expressly address Plaintiff's purported difficulty walking. However, the ALJ did find that Plaintiff can perform a limited range of medium work (Tr. 21) which "requires standing or walking, off and on, for a total of approximately 6 hours in an 8–hour workday . . ." See Social Security Ruling 83-10. Thus, it can be inferred from the ALJ's residual functional capacity finding that the ALJ discounted Plaintiff's subjective statement about her difficulty with walking.

In assessing Plaintiff's residual functional capacity the ALJ must necessarily consider her subjective allegations and make credibility findings. See 20 C.F.R. §§ 404.1529, 416.929; Social Security Ruling 96-7p. Plaintiff's statement that she is experiencing pain or other symptoms will not, taken alone, establish that she is disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and other symptoms alleged. See 20 C.F.R. §§ 404.1529(a), 416.929(a). In determining whether Plaintiff suffers from debilitating pain and other symptoms, the two-part test set forth in Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986), applies. In compliance with the first part of the test, the ALJ examined the record and determined is objective medical evidence of underlying medical conditions. Then the ALJ determined the objectively established medical conditions were not of such severity that they could reasonably be expected to produce the alleged symptoms to the degree alleged by Plaintiff (Tr. 22). See Id. Inasmuch as the purported symptoms suggested impairments of greater severity than could be shown by objective medical evidence, the ALJ appropriately considered other information and factors that may be relevant to the degree of symptoms alleged. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). For example, Plaintiff's purported inability to walk is inconsistent with her own

treating source consistently encouraging Plaintiff walk and exercise to lose weight (Tr. 18). See 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4). The undersigned concludes that the ALJ's findings regarding the credibility of Plaintiff's purported limitations are supported by substantial evidence and fully comport with applicable law. See 20 C.F.R. §§ 404.1529, 416.929.

C

Plaintiff also disagrees with Finding Nos. 8 and 9 because she believes that the ALJ's residual functional capacity assessment is not supported by substantial evidence in the record (DN 14 PageID # 738). For the reasons set forth above, substantial evidence in the record supports the ALJ's residual functional capacity assessment. Further, the vocational expert's testimony constitutes substantial evidence to support Finding Nos. 8 and 9 because the testimony was based on a hypothetical question that accurately portrayed Plaintiff's physical and mental impairments. Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is granted for the Commissioner.

Copies:     Counsel